UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. |
| | : | |
| v. | : | Filed Under Seal |
| | : | |
| SIMMEON D. WILLIAMS, | : | |
| also known as "Sim," | : | |
| | : | |
| Defendant. | : | |

PROFFER OF EVIDENCE

If this case were to go to trial, the government's evidence would establish beyond a reasonable doubt:

Count One
(Conspiracy to Commit Armed Carjackings)

1.  On the evening of January 2, 2003, SIMMEON D. WILLIAMS, also known as "Sim," agreed and conspired with others known to the government to participate in an armed robbery and carjacking at an Amoco (now BP) Station at 4501 Eastern Avenue in Mount Rainier, Maryland. Other members of the conspiracy included Darryl M. Woodfork, also known as "D," Erick C. McNair, also known as "Nut" or "Peanut," and another person whose name is unknown to WILLIAMS but is known to the government (DeCarlos A. Moore).

2.  In the early evening hours of January 2, 2003, conspirator Darryl M. Woodfork, also known as "D," driving a black Ford Taurus SHO, arrived in the area of 22nd and Perry Streets, N.E., in the Taft Terrace neighborhood in upper northeast, Washington, D.C. At that location were WILLIAMS and Erick C. McNair ("Nut" or "Peanut"). With Woodfork when he arrived was someone that WILLIAMS did not know by name but whose identity is known to the government

(DeCarlos A. Moore). WILLIAMS and McNair joined Woodfork and Moore in Woodfork's black Ford Taurus SHO.

3. Woodfork told WILLIAMS and McNair that some familiar drug dealers were at the Amoco Station with their cars, a black four-door Cadillac Concourse and a blue four-door Lincoln Town Car. Woodfork said that the dealers were "slipping," meaning they were not being vigilant and would probably be good robbery targets. WILLIAMS did not know the drug dealers that Woodfork was referring to by their full proper names, but he knew them by face and knew also they frequently engaged in drug trafficking at the Amoco Station. WILLIAMS knew one of the drug dealers, who was heavy set and dark skinned, by the nickname "Fats," and knew that another one of the drug dealers, who also was heavy set, was referred to as "John."

4. Woodfork suggested robbing the drug dealers at the Amoco Station and stealing their cars. The four – Woodfork, Moore, WILLIAMS, and McNair – agreed to do the robbery and carjackings, concluding that – beyond the cars – they would be likely to reap money, drugs, and guns. To help accomplish the robberies and carjackings, Woodfork had a 9mm semi-automatic pistol. McNair also had a 9mm Sturm Ruger semi-automatic pistol. DeCarlos A. Moore, the person with Woodfork whose name is unknown to WILLIAMS, had a small caliber semi-automatic pistol that was unloaded and had no magazine. WILLIAMS had no gun.

5. In Woodfork's black Ford Taurus SHO, the conspirators drove from the Taft Terrace neighborhood to the vicinity of the Amoco Station. They drove up 22nd Street and turned left on Eastern Avenue, passing by the Amoco Station. As they passed by, on the grounds of the Amoco Station, WILLIAMS saw the black Cadillac Concourse and the blue Lincoln Town Car. He also saw "Fats," "John," and a third individual standing nearby. Woodfork turned right on Queens Chapel

Road, and then onto a side street behind the Amoco Station. Woodfork stopped there. Woodfork gave WILLIAMS his 9mm semi-automatic pistol. WILLIAMS, McNair, and Moore then got out of Woodfork's black Ford Taurus SHO. Woodfork himself then went and parked his car at the Station by the air pumps.

6. WILLIAMS, armed with Woodfork's gun, McNair, armed with his own 9mm semi-automatic pistol, and Moore, armed with an unloaded small caliber semi-automatic pistol with no magazine, gathered behind a fence near of the Amoco Station. So that his hands would be free to search the robbery victims, WILLIAMS gave Woodfork's gun to McNair, who then had two guns.

7. Their faces concealed by hoods or masks, WILLIAMS, McNair, and Moore walked onto the lot at the Amoco Station. There WILLIAMS saw the black Cadillac Concourse and the blue Lincoln Town Car and, standing near those cars, "Fats," "John," and a third individual. WILLIAMS herded the three victims together while McNair, a gun in each hand, forced the three to the ground. As that was taking place, conspirator Moore, gun in hand, got into the Cadillac Concourse and drove off towards the Taft Terrace neighborhood, leaving WILLIAMS and McNair behind at the Amoco Station.

8. WILLIAMS quickly searched the three victims who had been forced by McNair to lie face down at the Station. He took money from all three. From one of the victims he also removed a black oversize Avirex jacket with a depiction of an Indian headdress on the back. WILLIAMS and McNair, between themselves, later split the money that WILLIAMS obtained in the robberies, never sharing any any of it with other members of the conspiracy. WILLIAMS kept the black Avirex jacket.

9. After searching and robbing the victims, WILLIAMS and McNair got into the blue Lincoln Town Car – which was already running – and drove south on 22nd Street into the District of Columbia. McNair drove. They went first to the Taft Terrace neighborhood, but then drove to Fort Lincoln, another nearby neighborhood in northeast, Washington, D.C. WILLIAMS and McNair searched the stolen blue Lincoln Town Car, and removed a radio and CD player which WILLIAMS later sold. WILLIAMS also helped search the stolen black Cadillac Concourse, and removed a television screen from that car. While the cars were being searched, members of the conspiracy were joined by two others with strong ties to the Taft Terrace neighborhood, Vernon McKenzie and Duane O. Sanders, also known as "Squeaky." McKenzie and Sanders helped the conspirators search the stolen cars, and McKenzie removed another television screen and a VCR from the stolen Cadillac.

10. In a black Chevrolet Suburban, Vernon McKenzie subsequently drove McNair and WILLIAMS to conspirator Woodfork's home on 33rd Avenue in Hyattsville, Maryland, where Woodfork had gone after the robberies and carjackings because of a court-imposed curfew that subjected him to electronic monitoring. On arriving there, WILLIAMS and McNair met with Woodfork. McNair returned Woodfork's 9mm semi-automatic pistol. Woodfork wanted to know the details about what had been obtained during the robberies and the search of the two cars, and also wanted a share of any money that had been taken. WILLIAMS and McNair falsely denied getting any money in the robberies, however, and thus neither gave any of the cash proceeds of the robberies to Woodfork.

11. Conspirator McNair kept the car keys for the stolen blue Lincoln Town Car, and was arrested driving that car three days later, on January 5, 2003. Before McNair was arrested,

WILLIAMS had been with him and in the stolen blue Lincoln for much of the day. In the car McNair had with him a loaded 9mm Ruger pistol, which was the same pistol McNair used in the carjackings and robberies on January 2, 2003.

Count Two
(Possession with Intent to Distribute Five Grams or More of Cocaine Base)

12.    On the night of October 3, 2003, at about 10: 40 p.m., officers of the Metropolitan Police Department, in order to investigate a report of drug activity, responded to the 1800 block of Otis Street, N.E. The officers saw a group of individuals standing in front of 1831 Otis Street, N.E. The group included SIMMEON D. WILLIAMS, also known as "Sim," who was wearing an oversized black Avirex jacket. In an ensuing search of WILLIAMS, from his underwear, officers recovered a clear plastic bag containing twenty-two individual bags of user-quantities of cocaine base, also known as crack cocaine, and four other bags with small wholesale quantities of cocaine base, also known as crack cocaine. The officers also recovered $230.00 in currency. An analysis by a forensic chemist at the Mid-Atlantic Laboratory of the Drug Enforcement Administration established that the bags recovered from WILLIAMS in fact contained cocaine base, also known as crack cocaine, and that it weighed a total of 10.6 grams. WILLIAMS possessed the cocaine base, also known as crack cocaine, which he previously had purchased from Sean A. Wolfe ("J.J." or "Six"), with the intent to sell and distribute it.

Count Three
(Possession of a Firearm in a School Zone)

13.    On January 24, 2005, at about 7:15 p.m., WILLIAMS was arrested by the members of the United States Park Police in the 1800 block of Perry Street, N.E. When he was arrested, WILLIAMS had a loaded and operable .40 caliber Smith & Wesson semi-automatic pistol (Serial

No. PBD7273) in his inner jacket pocket. That firearm had moved in interstate or foreign commerce. When he was arrested, WILLIAMS was on the grounds of the Taft Special Educational Center, and therefore was within 1000 feet of the grounds of a public, parochial, or private school.

<u>Limited Nature of Proffer</u>

14.     This proffer of evidence is not intended to constitute a complete statement of all facts known by SIMMEON D. WILLIAMS but is instead a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The facts either were provided by WILLIAMS or were otherwise known to the government. WILLIAMS has provided substantial additional information about the indicted offenses and about other offenses to the United States which is not contained herein. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for WILLIAMS's plea of guilty.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY

By: _____
    MICHAEL D. BRITTIN
    RACHEL CARLSON LIEBER
    Assistant United States Attorneys
    (202) 307-0106 (MDB)
    (202) 353-8055 (RCL)

## DEFENDANT'S ACCEPTANCE

      I have read the Proffer of Evidence setting forth the facts in support of my guilty plea. I have discussed this proffer fully with my attorney, James W. Beane, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.


Date:_____    _____
                                                SIMMEON D. WILLIAMS


## ATTORNEY'S ACKNOWLEDGMENT

      I have read each of the pages constituting the government's proffer of evidence as to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.


Date:_____    _____
                                                James W. Beane, Esq.
                                                Counsel for SIMMEON D. WILLIAMS