UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | Docket No. CR-05-375-01 (JR) |
| | : | |
| | : | <u>Filed under Seal</u> |
| v. | : | |
| | : | |
| | : | |
| SIMMEON D. WILLIAMS | : | |

GOVERNMENT'S MOTION AND MEMORANDUM
<u>IN SUPPORT OF MOTION FOR SENTENCING DEPARTURE</u>

The United States of America, by its counsel, the United States Attorney for the District of Columbia, pursuant to 18 U.S.C. § 3553(e) and Section 5K1.1 of the United States Sentencing Guidelines, respectfully submits this motion and memorandum in support of its request for a sentencing departure for defendant Simmeon D. Williams, who has provided substantial assistance to law enforcement authorities in the investigation and prosecution of others.

I. <u>Introduction</u>

On November 7, 2005, Williams entered a guilty plea to conspiracy to commit armed carjacking, in violation of 18 U.S.C. §371, possession with intent to distribute over five grams of cocaine base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and possession of a firearm in a school zone (Taft Special Educational Center), in violation of 18 U.S.C. § 922(q)(2)(A). Absent a sentencing departure, Williams faces a statutory minimum sentence of five years in prison, and a Guideline range of [insert] months. Williams, however, negotiated a plea agreement that provided him with the opportunity to work towards a sentencing departure by rendering substantial assistance in the investigation and prosecution of others. In the government's view, for the reasons specified in this memorandum, Williams has provided such assistance and, accordingly, has earned a sentencing departure.

## II. Procedural Background

On January 24, 2005, Simmeon Williams was arrested on a warrant for an alleged probation violation. Williams was apprehended outside of the Taft Recreation Center and on the grounds of the Taft Special Educational Center, the geographical heart of the Taft Terrace neighborhood. Williams had a gun in his pocket when apprehended, and was charged and detained in Superior Court. On [insert date], a three count information was filed against Williams in this Court. Count One charged him with conspiracy to commit armed carjacking on January 2, 2003, in violation of 18 U.S.C. §371. Count Two charged him with possession with intent to distribute over five grams of cocaine base, also known as crack cocaine, on October 3, 2003, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii). Count Three charged him with possession of a firearm in a school zone (Taft Special Educational Center) on January 24, 2005, in violation of 18 U.S.C. § 922(q)(2)(A). Williams entered a guilty plea to the three count information on November 7, 2005.

## III. Factual Background

As noted, Williams entered a guilty plea to a three count information charging him with different crimes committed on different dates. The individual crimes will be summarized separately.

### A. Conspiracy to Commit Armed Carjackings

On the evening of January 2, 2003, Williams conspired with others to participate in an armed robbery and carjacking at an Amoco (now BP) Station at 4501 Eastern Avenue in Mount Rainier, Maryland. Other members of the conspiracy included Darryl M. Woodfork, also known as "D," Erick C. McNair, also known as "Nut" or "Peanut," and DeCarlos A. Moore.

In the early evening hours of January 2, 2003, conspirator Darryl Woodfork, driving a black Ford Taurus SHO, arrived in the area of 22nd and Perry Streets, N.E., in the Taft Terrace

neighborhood in upper northeast, Washington, D.C. At that location were Williams and McNair. With Woodfork when he arrived was DeCarlos Moore. Williams and McNair joined Woodfork and Moore in Woodfork's black Ford Taurus SHO.

Woodfork told Williams and McNair that some familiar drug dealers were at the Amoco Station with their cars, a black four-door Cadillac Concourse and a blue four-door Lincoln Town Car. Woodfork said that the dealers were "slipping," meaning they were not being vigilant and would probably be good robbery targets. Williams did not know the drug dealers that Woodfork was referring to by their proper names, but he knew them by face and knew also they frequently engaged in drug trafficking at the Amoco Station. Williams knew one of the drug dealers, who was heavy set and dark skinned, by the nickname "Fats," and knew that another one of the drug dealers, who also was heavy set, was referred to as "John." Woodfork suggested robbing the drug dealers at the Amoco Station and stealing their cars. The four – Woodfork, Moore, Williams, and McNair – agreed to do the robbery and carjackings, concluding that – beyond the cars – they would be likely to reap money, drugs, and guns.

To help accomplish the robberies and carjackings, Woodfork had a 9mm semi-automatic pistol. McNair also had a 9mm Sturm Ruger semi-automatic pistol. DeCarlos Moore had a small caliber semi-automatic pistol that was unloaded and had no magazine. Williams had no gun. In Woodfork's black Ford Taurus SHO, the conspirators drove from the Taft Terrace neighborhood to the vicinity of the Amoco Station. They drove up 22nd Street and turned left on Eastern Avenue, passing by the Amoco Station. As they passed by, on the grounds of the Amoco Station, Williams saw the black Cadillac Concourse and the blue Lincoln Town Car. He also saw "Fats," "John," and a third individual standing nearby. Woodfork turned right on Queens Chapel Road, and then onto

a side street behind the Amoco Station. Woodfork stopped there. Woodfork gave Williams his 9mm semi-automatic pistol. Williams, McNair, and Moore then got out of Woodfork's black Ford Taurus SHO. Woodfork himself then went and parked his car at the Station by the air pumps.

Williams, armed with Woodfork's gun, McNair, armed with his own 9mm semi-automatic pistol, and Moore, armed with an unloaded small caliber semi-automatic pistol with no magazine, gathered behind a fence near of the Amoco Station. So that his hands would be free to search the robbery victims, Williams gave Woodfork's gun to McNair, who then had two guns. Their faces concealed by hoods or masks, Williams, McNair, and Moore walked onto the lot at the Amoco Station. There Williams saw the black Cadillac Concourse and the blue Lincoln Town Car and, standing near those cars, "Fats," "John," and a third individual. Williams herded the three victims together while McNair, a gun in each hand, forced the three to the ground. As that was taking place, conspirator Moore, gun in hand, got into the Cadillac Concourse and drove off towards the Taft Terrace neighborhood, leaving Williams and McNair behind at the Amoco Station.

Williams quickly searched the three victims who had been forced by McNair to lie face down at the Station. He took money from all three. From one of the victims he also removed a black oversize Avirex jacket with a depiction of an Indian headdress on the back. Williams and McNair, between themselves, later split the money that Williams obtained in the robberies, never sharing any any of it with other members of the conspiracy. Williams kept the black Avirex jacket.

After searching and robbing the victims, Williams and McNair got into the blue Lincoln Town Car – which was already running – and drove south on 22nd Street into the District of Columbia. McNair drove. They went first to the Taft Terrace neighborhood, but then drove to Fort Lincoln, another nearby neighborhood in northeast, Washington, D.C. Williams and McNair

searched the stolen blue Lincoln Town Car, and removed a radio and CD player which Williams later sold. Williams also helped search the stolen black Cadillac Concourse, and removed a television screen from that car. While the cars were being searched, members of the conspiracy were joined by two others with strong ties to the Taft Terrace neighborhood, Vernon McKenzie and Duane O. Sanders, also known as "Squeaky." McKenzie and Sanders helped the conspirators search the stolen cars, and McKenzie removed another television screen and a VCR from the stolen Cadillac.

In a black Chevrolet Suburban, Vernon McKenzie subsequently drove McNair and Williams to conspirator Woodfork's home on xxxxxxxxxxxxxx, where Woodfork had gone after the robberies and carjackings because of a court-imposed curfew that subjected him to electronic monitoring. On arriving there, Williams and McNair met with Woodfork. McNair returned Woodfork's 9mm semi-automatic pistol. Woodfork wanted to know the details about what had been obtained during the robberies and the search of the two cars, and also wanted a share of any money that had been taken. Williams and McNair falsely denied getting any money in the robberies, however, and thus neither gave any of the cash proceeds of the robberies to Woodfork.

Conspirator McNair kept the car keys for the stolen blue Lincoln Town Car, and was arrested driving that car three days later, on January 5, 2003. Before McNair was arrested, Williams had been with him and in the stolen blue Lincoln for much of the day. In the car McNair had with him a loaded 9mm Ruger pistol, which was the same pistol McNair used in the carjackings and robberies on January 2, 2003.

B.    <u>Possession with Intent to Distribute Five Grams or More of Cocaine Base</u>

On the night of October 3, 2003, at about 10:40 p.m., officers of the Metropolitan Police Department, in order to investigate a report of drug activity, responded to the 1800 block of Otis

Street, N.E. The officers saw a group of individuals standing in front of 1831 Otis Street, N.E. The group included Simmeon Williams, who was wearing an oversized black Avirex jacket. In an ensuing search of Williams, from his underwear, officers recovered a clear plastic bag containing twenty-two individual bags of user-quantities of cocaine base, also known as crack cocaine, and four other bags with small wholesale quantities of cocaine base, also known as crack cocaine. The officers also recovered $230.00 in currency. An analysis by a forensic chemist at the Mid-Atlantic Laboratory of the Drug Enforcement Administration established that the bags recovered from Williams in fact contained cocaine base, also known as crack cocaine, and that it weighed a total of 10.6 grams. Williams possessed the cocaine base, also known as crack cocaine, which he previously had purchased from Sean A. Wolfe ("J.J." or "Six"), with the intent to sell and distribute it.

  C. Possession of a Firearm in a School Zone

On January 24, 2005, at about 7:15 p.m., Williams was arrested by the members of the United States Park Police in the 1800 block of Perry Street, N.E. When he was arrested, Williams had a loaded and operable .40 caliber Smith & Wesson semi-automatic pistol (Serial No. PBD7273) in his inner jacket pocket. That firearm had moved in interstate or foreign commerce. When he was arrested, Williams was on the grounds of the Taft Special Educational Center, and therefore was within 1000 feet of the grounds of a public, parochial, or private school.

    IV. Substantial Assistance

Simmeon Williams was a secondary target in the Taft Terrace investigation, which revealed that was a member of the Taft Terrace Crew, the criminal enterprise that was at the center of the racketeering prosecutions stemming from that investigation. The investigation showed, more particularly, that Williams was involved in drug trafficking with other members of the Taft Terrace

Crew in the Taft Terrace neighborhood and in nearby Mount Rainier, Maryland. It also revealed that Williams possessed firearms and sometimes committed street robberies while armed, especially with his close associate Erick McNair, also known as "Nut" or "Peanut." Apart from Williams's involvement in the robberies and carjackings that figured into his guilty plea, however, the Taft Terrace investigation did not reveal any other crimes of violence in which Williams was involved.

Because Williams was not a primary figure in the Taft Terrace investigation, law enforcement did not expend its limited resources to target him in its pro-active investigation. On hearing that Williams was wanted for an alleged probation violation, however, law enforcement officers asked a confidential source to let them know when Williams was out and about in the Taft Terrace neighborhood. Such notice was soon provided, and Williams was apprehended outside of the Taft Recreation Center and on the grounds of the Taft Special Educational Center, the geographical heart of the Taft Terrace neighborhood, on January 24, 2005. Williams had a gun in his pocket when apprehended, and was charged and detained in Superior Court. That hold proved to be all the leverage that was needed to secure Williams guilty plea in District Court and his cooperation in the Taft Terrace investigation.

In debriefings, Williams admitted his gun possession on January 24, 2004, and owned up also to the two other crimes that became part of his guilty plea – the carjacking conspiracy on January 2, 2003, and his possession with intent to distribute over five grams of cocaine base on October 3, 2003 (a dismissed Superior Court case that was resurrected). More significantly, Williams admitted being a part of the criminal enterprise that was the Taft Terrace Crew. As such, he was able to able to provide his own perspective about the organization and structure of that enterprise, which was addressed in his appearance before the grand jury on November 10, 2005.

Williams cooperation also served to shore up and strengthen the government's hand in its prosecution of Darryl Woodfork, Anthony Nelson, and Duane Sanders who, on May 10, 2005, had been indicted with three other individuals for conspiracy to commit violent crimes in aid of racketeering activity (VICAR conspiracy), in violation of 18 U.S.C. § 1959(a)(5), and for murder in aid of racketeering activity (RICO murder), in violation of 18 U.S.C. § 1959(a)(1). This indictment charged that between December 28, 2003, and January 8, 2004, Woodfork, Nelson, Sanders, together with three other named and other unidentified members of the Taft Terrace Crew, conspired to kill Damian May, known as "Wink," and Clabe Walker, known as "Weasel." The indictment charged that the objectives of the conspiracy were realized when, on January 7 and 7, 2004, respectively, some of the conspirators killed May and Walker.

Although a member of the Taft Terrace Crew, Williams was not a part of the charged VICAR conspiracy. He learned about the conspiracy soon after it was formed, however, and in debriefings he provided law enforcement with detailed descriptions about admissions made to him by several of the conspirators, including Woodfork, Nelson, and Sanders. He also described events he witnessed or in which he participated that figured into some aspects of the evolving conspiracy. For example, Williams saw conspirators Andre Gore, Sean Wolfe, Woodfork, and Nelson in a stolen red van soon after a shooting in the 1800 block of Otis Street, N.E., on the evening of December 28, 2003. This shooting was the catalyst for the VICAR conspiracy, and the very first effort at violent retaliation for the shooting on Otis Street was committed by Gore, Wolfe, Woodfork, and Nelson, who used a stolen red van as a platform for that event.

In addition, although Williams was not involved in the murder of Damian May on the evening on January 7, 2004, he spent time in the aftermath of that event with Woodfork, Nelson, and

Sanders, all of whom were directly involved in the murder, and with Sean Wolfe, one of the most violent members of the VICAR conspiracy and the Taft Terrace Crew. Woodfork, Nelson, Sanders, and Wolfe were celebrating the murder of May, and Williams was able to describe that callous celebration that continued for several hours until, in the early morning hours of January 8, 2004, the VICAR conspiracy claimed its next victim, Clabe Walker. In these ways, then, Simmeon Williams contributed to the resolution of he VICAR conspiracy case, which resulted in guilty pleas by all defendants.

Williams's guilty plea to the carjacking conspiracy on January 2, 2003, and his grand jury testimony about the events that were committed in furtherance of that conspiracy, also contributed to another part of Darryl Woodfork's rather comprehensive guilty plea on June 28, 2006. Woodfork's guilty plea was to a five count information charging him with participation in a RICO enterprise through a pattern of racketeering activity (predicated on eighteen separate racketeering acts), conspiracy to make false statements in purchase of firearms, felonious destruction of property, and two counts of murder in aid of racketeering activity (RICO Murder). Three of the racketeering acts that Woodfork accepted responsibility for (Racketeering Acts 5, 6, and 7) stemmed from the carjacking conspiracy. In Racketeering Act 5, Woodfork accepted responsibility for the robberies of John Crawford, Delonta Jackson, and Corey Rious on January 2, 2003. In Racketeering Acts 6 and 7, respectively, Woodfork accepted responsibility for the interstate transportation of John Crawford's black Cadillac Concourse and Obral Vance's blue Lincoln Town car, the two cars taken in the carjackings.

Williams's District Court grand jury testimony about the carjacking conspiracy also contributed to the indictment and successful prosecution of Erick C. McNair, known as "Nut" or

"Peanut," for his role in the three robberies and the two carjackings that flowed from the conspiracy. A twelve count indictment was returned against McNair (Docket No. CR-06-121 (JR)). On October 6, 2006, McNair entered a non-cooperation guilty plea to conspiracy to commit armed carjackings. McNair, who is otherwise serving a combined seven year sentence in Maryland, is scheduled for sentencing before this Court on December 19, 2006.

V. Conclusion

For the foregoing reasons, the government asks this Court to find that Simmeon Williams has rendered substantial assistance to law enforcement in the investigation and prosecution of others, and therefore is entitled to a sentencing departure. Our recommendation is that Williams be sentenced to thirty-six months in prison followed by a five year period of supervised release.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

By: _____
     MICHAEL D. BRITTIN
     RACHEL CARLSON LIEBER
     Assistant United States Attorneys
     555 4th Street, N.W.
     Washington, D.C. 20530
     (202) 307-0106 (MDB)
     (202) 353-8055 (RCL)

CERTIFICATE OF SERVICE

    I hereby certify that on the _____ of December, 2006, a copy of the foregoing pleading was served via first-class mail upon James W. Beane, Esq., 2715 M Street, N.W., Suite 250, Washington, D.C. 20007.

                                                                       Michael D. Brittin
                                                                      Assistant United States Attorney

Case 1:05-cr-00375-JR     Document 8     Filed 12/12/2006     Page 11 of 11